UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> DELSA U. THOMAS, <br> THE D. CHRISTOPHER CAPITAL <br> MANAGEMENT GROUP, LLC, and <br> THE SOLOMON FUND, LP <br><br> Defendants. | § § § § § § § § § § § § § §  Case No. |

# COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY OF THE ACTION

1. In June 2011, Delsa Thomas formed purported investment adviser The D. Christopher Capital Management Group, LLC and purported hedge fund The Solomon Fund, LP, and registered the former as an investment adviser with the Commission.

2. Since October 2011, Defendants have perpetrated a fraudulent scheme through which they have raised approximately $2,300,000 from six investors located in the United States and Canada, including DFW New Beginnings Church in Irving, Texas where Thomas is a member (the "Church").

3. Defendants persuaded Thomas's Church and others to invest with them based on lies that their monies would be used in bond transactions or invested in U.S. Treasury notes.

4. In reality, Thomas and her entities comingled investor funds, lost investor funds in reckless payments to other shadowy companies, made Ponzi payments to investors in

Thomas's earlier investment programs, and squandered many of the remaining funds on personal expenses.

5.      In addition to lying to investors about the misbegotten use of their funds, Thomas, as the sole principal and actor for the entity Defendants, made material misrepresentations and omissions of fact about her experience and success, the safety of the supposed investments she and the entities offered, and potential investment returns.

6.      To date, Defendants' fraudulent conduct has cost investors approximately $1,771,000.[1] Worse, Defendants continue to lull investors with empty promises of repayment despite having no funds with which to compensate their victims.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77u(a), 77v(a)], Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78aa], and Sections 209 and 214 of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-14].

8.      Venue is proper under Section 22(a) of the Securities Act, Section 27 of the Exchange Act, and Sections 209 and 214 of the Advisers Act because transactions, acts, practices and courses of business described below occurred within the Northern District of Texas. Defendants, directly and indirectly, have made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events and omissions giving rise to the Commission's claims occurred in the Northern District of Texas, including the facts that Thomas lives and works in this district and formed the entity Defendants here, Defendants

---

[1] This sum excludes $209,000 paid to two of Solomon Fund's investors which, as described in detail herein, constitute classic Ponzi payments insofar as the source of the funds consists of margin loan proceeds Thomas obtained while carrying out the fraudulent scheme.

*SEC v. Delsa U. Thomas, et al.*                                                                                                 Page 2 of 14
Complaint

received funds in this district, and misappropriated investor funds for personal use from bank accounts serviced by banks in this district.

## PARTIES

**A.     Defendants**

9.     Delsa U. Thomas, 50, resides in Dallas, Texas.  She formed D. Christopher Capital Management Group, LLC and Solomon Fund, LP in June 2007 and is the sole principal and actor for both entities.  Thomas asserted her Fifth Amendment privilege against self-incrimination and declined to testify in the Commission's investigation.

10.     The D. Christopher Capital Management Group, LLC ("DCCMG") was incorporated by Thomas in Texas in June 2011 and purports to act as an investment adviser. DCCMG is headquartered in Irving, Texas and is general partner of The Solomon Fund, LP. DCCMG maintains a public website at http://dchristophercapitalmanagement.com/.

11.     The Solomon Fund, LP ("Solomon Fund") is a Delaware limited partnership Thomas formed in 2011 as a purported hedge fund ostensibly organized to provide support for humanitarian causes.  Solomon Fund is headquartered in Irving, Texas.

## FACTUAL ALLEGATIONS

**A.     Before She Could Be Terminated, Thomas Left Morgan Stanley Smith Barney to Form DCCMG and Solomon Fund.**

12.     Thomas is a former registered representative who was associated with Morgan Stanley Smith Barney ("MSSB") from June 2009 through February 2011, during which time she held Series 7, 63, and 65 licenses.

13.     While Thomas was associated with MSSB, she persuaded clients to invest their funds in a private placement offering and a high yield investment program, both of which may have been fraudulent schemes, through which Thomas's clients lost their funds.  These apparent

schemes resulted in investor litigation. *See, e.g., Caligone, et al. v. Morgan Stanley Smith Barney, L.L.C. and Delsa Thomas,* Cause No. DC-12-06915-M, in the 298th Judicial District Court of Dallas County, Texas; *Wood v. Morgan Stanley Smith Barney, LLC, Delsa Thomas, and Third Coast Financial,* Cause No. DC-13-00717, in the 192nd Judicial District Court of Dallas County, Texas.

14. While she was still employed with MSSB, the Church opened an account with the firm, instructing Thomas to invest its money safely and to seek growth with the least possible amount of risk.

15. Thomas convinced the Church to invest $405,000 in the high-yield investment program. After the Church lost its entire investment, it filed suit to recover its funds in *Freedom Center DFW d/b/a DFW New Beginnings and Jon Wilson v. Third Coast Financial Group, et al.,* Cause No. DC-11-14107, in the 95th Judicial District Court of Dallas County, Texas.

16. In December 2010, MSSB warned Thomas that she would be fired if her performance did not improve. Thomas resigned two months later.

17. Following her resignation from MSSB, Thomas formed DCCMG and Solomon Fund in June 2011.

18. Also in June 2011, Thomas registered DCCMG as an investment adviser with the Commission though it did not, and currently does not, qualify for Commission registration. To qualify for registration in 2011, DCCMG was required either to have assets under management of at least $25,000,000, or to satisfy a recognized exemption. DCCMG did not have, and does not currently have, the required amount of assets under management to qualify for registration, nor did it, or does it now, qualify for any exemption.

19. DCCMG purports to be an investment adviser that offers, according to its website, "strategic funding solutions through structuring private offerings" and "wealth management services ranging from advisory to complete portfolio management for all of our clients." Notably, DCCMG's sole client is Solomon Fund.

20. Thomas describes Solomon Fund to prospective investors as a hedge fund providing support to humanitarian causes.

**B.     Thomas Solicited Her Church for Investment in DCCMG and Misused the Funds.**

21. After successfully convincing her Church to invest $405,000 in the high-yield investment program, based in part on representations about her expertise and success, Thomas persuaded the Church to invest another $420,000 with DCCMG for a supposed bond transaction involving trading on European and Hong Kong markets.

22. In soliciting its investment with DCCMG, Thomas promised the Church that its investment monies would be doubled in one year or less.

23. Instead of the safe, low-risk investments the Church expected, Thomas sent $370,000 of the Church's funds to Solomon Fund's securities account with MS Howells, an introducing broker that clears through Pershing LLC.

24. Thomas then attempted to transfer $700,000,000 face value HSBC Holding PLC bonds, supposedly held by an offshore company and "street" valued at $54,000,000, in a SWIFT MT-760 transaction.

25. Pershing rejected the SWIFT MT-760 transaction in November 2011 due to, among other things, lacking information about the source of the bonds and the risk associated with MT-760 transactions.

26. Despite Pershing's refusal to clear the transaction, In December 2011 DCCMG and Thomas acknowledged to the Church the receipt of its $420,000 investment and stated that DCCMG would go forward on the "bond transaction per our agreement."  Thomas and DCCMG knew these statements were false when they made them, because (a) the SWIFT-MT 760 transaction, if it even existed and was not itself fraudulent, was riskier than permitted by the Church; and (b) Pershing had already rejected the transaction.  Thomas did not attempt another bond transaction.

27. On or about January 3, 2012, Thomas wired $90,000 of the Church's original investment funds to American Capital Holdings, LLC, a purported "boutique hard money lender for commercial real estate" located in Pittsburgh, Pennsylvania.

28. In January and February, 2012, Thomas and DCCMG returned the remaining $330,000 of the Church's principal investment.

29. On or about June 30, 2012, DCCMG acknowledged in writing that it held $90,000 of the Church's funds, despite having transferred the funds to American Capital Holdings, LLC.  Thomas knew this statement was false when she made it.

**C.    Defendants Continued Their Scheme, Raising Nearly $2,000,000 From Individual Investors.**

30. In addition to Thomas's own Church, Defendants bilked five other investors out of approximately $1,800,000 through investments in DCCMG and Solomon Fund.

31.  Defendants' largest single investor, a San Antonio, Texas-based and self-proclaimed real estate development and financing company (the "San Antonio Investor"), invested $1,000,000 with Solomon Fund based on Thomas's guarantee that Solomon Fund would pay $7,500,000 on the $1,000,000 investment in 35 banking days.

32. Thomas assured the San Antonio Investor that its entire $1,000,000 would be invested in U.S. Treasury notes and remain safe and on deposit in a designated account for the sole purpose of serving as proof of funds for other vaguely-described transactions Thomas claimed she would undertake.

33. To secure the investment, Thomas misrepresented to the San Antonio Investor that she was highly experienced and successful in similar transactions – statements that she knew were false and misleading.

34. Shortly after securing the San Antonio Investor's investment, Thomas persuaded two Canadian individuals to invest $190,000 with Solomon Fund. In exchange for their investment, Thomas and Solomon Fund promised to repay the investors their principal plus 10% within five to ten banking days.

35. Thomas and Solomon Fund combined the funds raised from the San Antonio and Canadian investors to purchase U.S. Treasury Notes on April 16, 2012. But on April 17, 2012 Thomas secretly borrowed more than $850,000 against the notes (the "Margin Loan Proceeds").

36. Thomas and Solomon Fund used a portion of the $850,000 Margin Loan Proceeds to make Ponzi payments to the Canadian investors of their principal plus 10%. Defendants did not disclose to investors the source of the funds used to repay the Canadians.

37. In May 2012, Thomas increased her borrowings against the Treasury notes to over $1,000,000.

38. Thereafter, Thomas persuaded the Canadian investors – who believed Thomas and Solomon Fund had performed as promised on their prior investment – to invest additional funds, along with a new, third Canadian investor, totaling $315,000. Similar to their prior

guarantees, Thomas and Solomon Fund represented to the three Canadian investors that they would be repaid their original investment plus 10% in 21 banking days.

39.     Around the same time Thomas and Solomon Fund were raising new funds from Canadian investors, Thomas also induced an Andorran resident to invest $385,000 through an investment contract with DCCMG which promised to double the principal investment in 35 banking days.

40.     Thomas and DCCMG did not use the Andorran investor's funds as they represented they would.  Rather, they wasted the majority of the funds in a suspect transfer to a shadowy foreign company that may itself be carrying on a fraud, and spent the remaining monies in Ponzi payments and to cover personal expenses.

**D.     Defendants Misused and Misappropriated Investment Proceeds.**

41.     Defendants did not use the $2,300,000 raised from investors as they represented they would.

42.     While the Church instructed Thomas to make conservative, low-risk investments of its money, she attempted to engage in highly-suspect offshore transactions utilizing SWIFT MT-760 banking instruments and, when her efforts failed, she wasted $90,000 of the Church's funds in a questionable transfer to American Capital Holdings, LLC.

43.     In addition, while Thomas purchased treasury notes with the monies she and Solomon Fund received from the San Antonio and Canadian investors, she immediately margined those securities to obtain funds she misappropriated.  These acts were contrary to Thomas's representations and guarantees to investors.

44.     As described above, Thomas and Solomon Fund misappropriated $209,000 of the Margin Loan Proceeds to make Ponzi payments to two of the Canadian investors,

mischaracterized as payments of principal plus interest, which payments were never disclosed to the San Antonio Investor.

45. Thomas wasted $224,000 of the Andorran investors' funds in a transfer to a shadowy Canadian company that purports to offer financial consulting services.

46. Thomas spent an additional $152,000 on Ponzi payments to investors who lost their money in the earlier high-yield investment program and private placement offering she induced her clients to participate in while associated with MSSB.

47. Defendants also transferred at least $70,000 to intermediaries with whom Thomas dealt to identify and secure investments from the Canadian investors, among others.

48. Thomas also used at least $290,000 of investors' funds to cover personal expenses. Specifically, Thomas made a $28,000 "donation" to her Church which in reality was another Ponzi payment, deposited $100,000 into a joint bank account with her mother, and diverted $70,000 to friends or relatives.

49. None of Defendants' Ponzi payments or other misuses of investor funds were disclosed to investors, nor did investors have any reason to believe their funds would be used as they were.

50. In fact, Defendants continue to offer their services to the public, including through DCCMG's website. And Thomas actively mollifies DCCMG and Solomon Fund investors with promises of imminent repayment, despite the fact that Defendants have no assets for funds with which to compensate their victims.

# CLAIMS FOR RELIEF

## FIRST CLAIM
### Violations of Section 17(a) of the Securities Act
[Against All Defendants]

49.     The Commission repeats and realleges Paragraphs 1 through 50 of the Complaint as if fully set forth herein.

50.     As alleged herein, Thomas, DCCMG, and Solomon Fund, directly or indirectly, singly or in concert, in the offer or sale of securities, by the use of the means and instruments of transportation and communication in interstate commerce or of the mails, knowingly or with reckless disregard for the truth: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

51.     By engaging in the foregoing conduct, Gilchrist violated, and unless enjoined will continue to violate, Securities Act Sections 17(a)(1) and 17(a)(3) [15 U.S.C. §§ 77q(a].

## SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
[Against All Defendants]

52.     The Commission repeats and realleges Paragraphs 1 through 50 of the Complaint as if fully set forth herein.

53.     As alleged herein, Thomas, DCCMG, and Solomon Fund, directly or indirectly, singly or in concert, by the use of the means or instrumentalities of interstate commerce, of the mails or of the facilities of a national securities exchange, in connection with the purchase or sale

of securities, knowingly or with reckless disregard for the truth: (a) employed devices, schemes, and artifices to defraud; (b) made an untrue statement of a material fact or to omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities and upon other persons.

54. By engaging in the foregoing conduct, Defendants violated, and unless enjoined will continue to violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5].

## THIRD CLAIM
### Violations of Sections 206(1), 206(2), and 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder
[Against DCCMG and Thomas]

55. The Commission repeats and realleges Paragraphs 1 through 50 of the Complaint as if fully set forth herein.

56. At all relevant times, Thomas and DCCMG operated as investment advisers as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b2(a)(11)], and served in that capacity with respect to their clients and investors.

57. As alleged herein, Thomas and DCCMG, while acting as investment advisers, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce: (a) with requisite scienter, employed devices, scheme, and artifices to defraud clients; and (b) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon clients and prospective clients.

58. As further alleged herein, Defendants Thomas and DCCMG, while acting as investment advisers to pooled investment vehicles, made untrue statements of material facts or

omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to investors or prospective investors, or otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors.

59. By reason of the foregoing, Thomas and DCCMG violated, and unless enjoined will continue to violate, Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8].

### FOURTH CLAIM
### Violations and Aiding and Abetting Violations of Section 203A of the Advisers Act
### [Against DCCMG and Thomas]

60. The Commission repeats and realleges Paragraphs 1 through 50 of the Complaint as if fully set forth herein.

61. DCCMG maintains its principal office and place of business within the State of Texas and has assets under management of less than $25million. DCCMG is not otherwise exempt from the provisions of Section 203A of the Advisers Act [15 U.S.C. § 80b-3a]. DCCMG is, and at all relevant times was, ineligible to register with the Commission as an investment adviser and is required to register with the appropriate state entity under Section 203 of the Advisers Act [15 U.S.C. § 80b-3].

62. By engaging in the conduct described above, DCCMG violated, and unless restrained and enjoined will continue to violate, Section 203A of the Advisers Act [15 U.S.C. § 80b-3a].

63. Thomas has aided and abetted and caused DCCMG's violation of Section 203A by knowingly providing substantial assistance to DCCMG's violations thereof, and unless enjoined and restrained will continue to aid and abet and cause violations of Section 203A of the Advisers Act [15 U.S.C. § 80b-3a].

## RELIEF REQUESTED

For these reasons, the Commission respectfully requests that the Court enter a judgment:

(a) Permanently enjoining Delsa U. Thomas from violating Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Sections 203A and 206(a)(1), (2), and (4) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1),(2) and (4), and 80b-3a] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8];

(b) Permanently enjoining The D. Christopher Capital Management Group, LLC from violating Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], Sections 203A and 206(a)(1), (2), and (4) of the Investment Advisers Act of 1940 [15 U.S.C. §§ 80b-6(1),(2) and (4), and 80b-3a] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8];

(c) Permanently enjoining The Solomon Fund, LP from violating Section 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

(d) Ordering Defendants to disgorge, jointly and severally, any ill-gotten gains and/or unjust enrichment realized by each of them, plus prejudgment interest thereon;

(e) Ordering each Defendant to pay an appropriate civil monetary penalty pursuant to Sections 20(d) of the Securities Act of 1933 [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Securities and Exchange Act of 1934 [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Investment Advisers Act of 1940; and

(f) Granting such further relief as this Court may deem just and proper.

Dated: February 14, 2013            Respectfully submitted,

 */s/ Jessica B. Magee*
Jessica B. Magee
Texas Bar No. 24037757

SECURITIES AND EXCHANGE COMMISSION
Fort Worth District Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
(817) 978-6465
(817) 978-4927 (facsimile)
*mageej@sec.gov*

COUNSEL FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION