IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:13-CV-739-L** |
| DELSA U. THOMAS; THE D. CHRISTOPHER CAPITAL MANAGEMENT GROUP, LLC; AND THE SOLOMON FUND, LP, | § § § § § § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's Motion for Final Default Judgment (Doc. 11), filed May 10, 2013. After consideration of the motion, brief, record, and applicable law, the court **grants** Plaintiff's Motion for Final Default Judgment (Doc. 11).

**I.    Background**

Plaintiff Securities and Exchange Commission ("Commission" or "Plaintiff") brought this action against Defendants Delsa U. Thomas ("Thomas"); The D. Christopher Capital Management Group, LLC ("DCCMG"); and The Solomon Fund, LP ("Solomon Fund") (collectively, "Defendants"), alleging violations of federal securities laws. The Commission alleges in its Complaint and motion that Defendants fraudulently induced members of Thomas's church, New Beginnings, and others to invest with them approximately $2.3 million, which was supposed to be invested in bond transactions or U.S. Treasury notes. The Commission alleges that Defendants instead "commingled investor funds, lost investor funds in reckless payments to other shadowy

companies, made Ponzi payments to investors in Thomas's earlier investment programs, and squandered many of the remaining funds on personal expenses." Pl.'s Compl. 1-2. The Commission further alleges that "Thomas, as the sole principal and actor for the entity Defendants, made material misrepresentations and omissions of fact about her experience and success, the safety of the supposed investments she and the entities offered, and potential investment returns." *Id.* at 2. The Commission alleges that "Defendants continue to lull investors with empty promises of repayment despite having no funds with which to compensate their victims." *Id.* The Commission alleges that Defendants engaged in fraud in connection with the offer, purchase, and sale of securities in violation of the antifraud provisions of: (1) section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a); (2) section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and (3) Rules 10b-5(a) and (c) of the Exchange Act, 17 C.F.R. §§ 240.10b-5. The Commission also alleges that Thomas and DCCMG engaged in fraudulent behavior in violation of sections 206(1), (2), and (4) of the Investment Advisers Act ("Advisers Act"), 15 U.S.C. § 80b-6(1), (2), (4); Rule 206(4)-8 of the Advisers Act, 17 C.F.R. 275.206(4)-8; and section 203A of the Advisers Act, 15 U.S.C. § 80b-3a.

Defendants were properly served on February 19, 2013, and to date have not filed an answer to the Complaint or otherwise defended in this lawsuit. Plaintiff requested the clerk to issue entry of default on May 9, 2013, and default was entered by the clerk on the same day. Plaintiff now requests entry of default judgment against Defendants in the form of a civil monetary penalty, a permanent injunction, disgorgement, and prejudgment and postjudgment interest.

**II.     Analysis**

The court finds that because Defendants have neither filed an answer to the Commission's Complaint nor otherwise defended in this lawsuit, and because Defendants are not infants, incompetent or in the military, the Commission is entitled to judgment against Defendants. Pl.'s Mot., Exh. B (Doc. 11-17); 50 U.S.C. App. §§ 501-527. The court, therefore, accepts as true the well-pleaded allegations stated by the Commission in its Complaint and the facts set forth in the evidence in support of the Commission's Motion for Final Default Judgment.

**A.     Permanent Injunction**

Plaintiff requests the court to permanently enjoin Defendants from violating the aforementioned securities laws. Section 20(b) of the Securities Act, section 21(d) of the Exchange Act, and section 209(d) of the Advisers Act authorize the Commission to seek injunctive relief upon a "proper showing" that the defendant "is engaged or is about to engage" in violations of the securities laws. *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981) (citations omitted). "[T]he Commission is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a 'reasonable likelihood' of future transgressions." *Id.* (citations omitted). After a careful review of the evidence and applicable authority, the court determines that permanent injunctive relief is appropriate pursuant to section 20(b) of the Securities Act, section 21(d) of the Exchange Act, and section 209(d) of the Advisers Act.

Accordingly, Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order or the Judgment in this case by personal service or otherwise are permanently **restrained and enjoined** from:

1. violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a. to employ any device, scheme, or artifice to defraud;

    b. to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c. to engage in any transaction, practice, or course of business that operates or would operate as a fraud or deceit upon the purchaser; and

2. violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], in connection with the purchase or sale of a security, by making use of any means or instrumentality of interstate commerce, of the mails or of any facility of any national securities exchange:

    a. to use or employ any manipulative or deceptive device or contrivance;

    b. to employ any device, scheme, or artifice to defraud;

    c. to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    d. to engage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person.

Further, Defendants Thomas and DCCGM, their agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order or the Judgment in this case by personal service or otherwise are permanently **restrained and enjoined** from:

1. violating Section 203A of the Exchange Act [15 U.S.C. §§ 80b-3a], by making use of the mails or any means or instrumentality of interstate commerce in connection with their business as an investment adviser while not registered with the Commission as an investment adviser; and

2. aiding or abetting, in violation of sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)] and Rule 206(4)-8 thereunder [17 C.F.R. 275.206(4)-8].

**B.   Disgorgement and Prejudgment Interest**

Plaintiff also seeks disgorgement and prejudgment interest. Disgorgement is an equitable remedy designed to "wrest[ ] ill-gotten gains from the hands of a wrongdoer." *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) (citations omitted). District courts have broad discretion in ordering disgorgement and calculating the amount of disgorgement. *Allstate Ins. Co v. Receivable Fin. Co. LLC*, 501 F.3d 398, 413 (5th Cir. 2007) ("In actions brought by the SEC involving a securities violation, 'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'"); *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993). The remedy of disgorgement is remedial rather than punitive; thus, "it is limited to property causally related to the wrongdoing at issue." *Allstate Ins. Co.*, 501 F.3d at 413.

"[T]he decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion." *SEC v. United Energy Partners*, Inc., 2003 WL 223392, at *1 (N.D. Tex. Jan. 28, 2003) *aff'd*, 88 F. App'x 744 (5th Cir. 2004), *cert. denied*, *Quinn v. SEC*, 543 U.S. 1034 (2004) (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996)). "[W]hether prejudgment interest should be awarded in a Rule 10b-5 action is a question of fairness resting within the District Court's sound discretion." *Id.* (citing *Wolf v. Frank*, 477 F.2d 467, 479 (5th Cir. 1973)). Generally, the appropriate benchmark for calculating prejudgment interest is the rate used by the Internal Revenue Service for unpaid balances ("IRS underpayment rate"). *First Jersey*, 101 F.3d at 1476; *see also United Energy Partners*, 88 F. App'x at 747 (finding no abuse of discretion where the district court applied the IRS underpayment rate of interest for a portion of the applicable period and reduced the IRS underpayment rate by half for the remaining portion of the applicable period).

Plaintiff contends that Defendants should be held jointly and severally liable for disgorgement and prejudgment interest because Thomas orchestrated the fraudulent scheme by which she and the other Defendants raised over $2.3 million from investors. Joint and several liability is appropriate in securities cases where, as here, individuals or entities collaborate or have close relationships in engaging in illegal conduct. *United Energy Partners*, 88 F. App'x at 747; *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 1959843, at *2 (N.D. Tex. May 5, 2008). The allegations of the Complaint establish that Defendants jointly engaged in a fraudulent scheme resulting in substantial loss to investors, and the Commission presented evidence that Defendants received at least $1.98 million from their participation in the fraud ($2.31 million raised minus $330,000 returned to New Beginnings). The Commission also presented evidence regarding the calculation

of prejudgment interest at the applicable underpayment rate. According to the declaration of Ronda J. Blair ("Blair"), the Commission requests and is entitled to $9,939.56 in prejudgment interest. Accordingly, the court **orders** that Defendants are jointly and severally liable for disgorgement of **$1,980,000**, representing ill-gotten gains as a result of the conduct alleged in the Complaint, plus prejudgment interest of **$9,939.56**, for a total of **$1,988,838.56**.

### C.   Third-Tier Civil Penalty

Finally, the Commission requests that the court impose the maximum third-tier civil penalty against Defendants under Section 20(d) of the Securities Act, 15 U.S.C. §77t(d); section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3); and section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e). "Civil penalties are designed to punish the individual violator and deter future violations of the securities laws." *AmeriFirst Funding*, 2008 WL 1959843, at *2 (citation omitted). "Without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains." *Id.* (citation omitted). The applicable penalty provisions set forth an escalating three-tier penalty structure for securities laws violations depending on the egregiousness of the conduct. Third-tier penalties are proper if: (1) "the violation . . . involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and (2) "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *United Energy Partners*, 88 F. App'x at 747; 15 U.S.C. §§ 77t(d)(2)(C); 78u(d)(3)(B)(iii); 15 U.S.C. § 80b-9(e).

For individuals, the maximum penalty is $150,000 per third-tier violation or the defendant's gross amount of pecuniary gain, which ever is greater. 17 C.F.R. 201.1004 (increasing statutory penalty amounts to account for inflation). For entities, the maximum penalty is $725,000 per

third-tier violation or the defendant's gross amount of pecuniary gain, which ever is greater. *Id.* The Commission states in its motion that Thomas's civil penalty range is "$0 up to the low maximum of $150,000 per violation, or the high maximum of $1.98 million, the gross amount of her pecuniary gain" and DCCMG's and Solomon Fund's civil penalty ranges are "$0 up to the low maximum of $725,000 per violation, or the high maximum of $1.98 million, the gross amount of their pecuniary gain." Pl.'s Mot. 19-20.

The court determines that a third-tier civil penalty is appropriate because Defendants' violations of the federal securities laws, as described in the Complaint, involved fraud, deceit, and a deliberate or reckless disregard of a regulatory requirement, and such violations directly or indirectly resulted in substantial losses to other investors. Accordingly, the court **orders** Defendant Thomas to pay a civil penalty in the amount **$150,000**; and Defendants DCCMG and Solomon Fund shall each pay civil penalties in the amount of **$725,000**.

## III.  Conclusion

For the reasons explained, the court grants Plaintiff's Motion for Final Default Judgment (Doc. 11). Accordingly, the court **permanently enjoins** Defendants from violating section 17(a) of the Securities Act and Section 10(b) of the Exchange Act; and **permanently enjoins** Defendants Thomas and DCCMG from violating section 203A of the Exchange Act and sections 206(1), (2), and (4) of the Advisers Act, and Rule 206(4)-8 of 17 C.F.R. 275.206(4)-9, as herein set forth. The court hereby **orders** that default judgment be entered in favor of Plaintiff and that Defendants are jointly and severally liable for disgorgement of **$1,980,000**, plus prejudgment interest of **$9,939.56**, for a total of **$1,988,838.56**.

Further, the court assesses a third-tier civil penalty against: Thomas in the amount **$150,000**; DCCMG in the amount of **$725,000**; and Solomon Fund in the amount of **$725,000**. Postjudgment interest on the total amount of disgorgement and prejudgment interest shall accrue at the applicable federal rate as of the date of entry of this judgment until it is paid in full. In accordance with Rule 58 of the Federal Rules of Civil Procedure, a judgment will issue by separate document. Once judgment is entered, the court **directs** the clerk of the court to close this action.

**It is so ordered** this 4th day of March, 2014.

Sam A. Lindsay
United States District Judge